**SO ORDERED.**

**DONE and SIGNED February 17, 2017.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| Shane Stewart Allen | § § § | Case Number: 16-11029 |
| Debtor | § § | Judge Jeffrey P. Norman |

### ORDER SETTING MOBILE HOME VALUATION

This matter is before the Court concerning the valuation of a 2013 Southern Energy double wide mobile home in which the debtor resides. The Court held a confirmation hearing on the debtor's Chapter 13 Plan on February 15, 2017. The debtor, 21st Century Mortgage ("21st Century"), and the Chapter 13 Trustee stipulated that the hearing would be limited to the issue of the mobile home valuation. All other confirmation objections were reserved. After considering the pleadings, evidence, testimony, and arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by

1

Federal Rules of Bankruptcy Procedure 7052 and 9014.2. To the extent any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party. The Court also reserves the right to supplement the findings of fact and conclusions of law. For the following reasons, the Court values the mobile home at $34,982.00.

## PROCEDURAL BACKGROUND

Debtor Shane Allen lives in Princeton, Louisiana, and resides in the mobile home which is the subject of this order. His ownership interest is limited to the mobile home; he does not own the immovable property (real estate) on which the mobile home sits. No evidence was offered as to the ownership of the land on which the mobile home is located, and it is unclear if the debtor is renting a lot or has other payment arrangements for the mobile home site. 21st Century holds a claim against the mobile home. The debtor filed this Chapter 13 bankruptcy case on June 20, 2016. On July 18, 2016, the debtor proposed a plan (ECF No. 8) which valued the mobile home at $20,000.00, and estimated 21st Century's secured claim at $51,913.00. The debtor's plan provided that the Court value the secured claim and pay the claim pursuant to 11 U.S.C. § 506. Among other objections, 21st Century has objected to the debtor's valuation of the mobile home.

## FINDINGS OF FACT

The debtor's expert witness for valuation was Jeremy Stokes. The Court finds Mr. Stokes generally credible; however, he is inexperienced regarding mobile home valuations. This is the first court proceeding in which he has testified and he has limited experience in appraising mobile homes of this type. Still further, the experience Mr. Stokes' does have in valuing mobile homes of this type has been limited to providing valuations for debtors represented by the same

law firm as the debtor in this case. Those valuations are all in the context of Chapter 13 cases, with debtors who are likely seeking to cram down their mobile home mortgages under 11 U.S.C. § 506. Mr. Stokes holds no certification to appraise mobile homes, but he does hold a Louisiana Residential Real Estate Appraiser's license. Mr. Stokes testified that the market value of the subject property was $30,000.00. In Louisiana, real estate sales are public records and an appraiser can easily ascertain comparable sales. Mr. Stokes testified there are no such records for mobile home sales that do not include an immovable property (real estate) interest.

The Court discounted Mr. Stokes' testimony and valuation opinion based on the following factors:

(a) His general inexperience as noted above;

(b) His lack of any work experience within the mobile home industry;

(c) His lack of any certification as to mobile home valuations; and

(d) The lack of evidence or testimony as to the facts or his expertise, specifically with respect to how he calculated his cost multiplier (.89) and physical depreciation ($19,362.00) in his appraisal (Debtor Ex. "A"). These factors are the main reasons for the difference in the debtor's valuation of $30,000.00 and the creditor's valuation of $35,000.00.

21st Century's expert witness was Hugh Harvey. By contrast to Mr. Stokes, Mr. Harvey is board certified by the NADA for FHA/VA/Conventional Loan Manufacturing Housing Appraisals and has a work history of over 40 years in the mobile home industry. He has conducted over 1,300 mobile home appraisals and testified in over 250 bankruptcy cases. Mr. Harvey's credentials as an expert witness greatly outweigh those of Mr. Stokes. The Court finds Mr. Harvey's testimony credible. Mr. Harvey valued the mobile home at a base value of

3

$35,000.00 using a NADA Guide Used Value Report for mobile homes. He also made a positive adjustment of $7,743.00 for delivery and setup, for a total value of $42,743.00. The Court finds Mr. Harvey's methodology for valuation of used mobile homes by use of the NADA guide with adjustments to be factually and procedurally sound. With the exceptions noted herein, the Court adopts Mr. Harvey's valuation using the NADA Guide Used Value Report for mobile homes.

## CONCLUSIONS OF LAW

The Court places the burden of proof for valuation of the mobile home on the debtor. The debtor has the burden of proof for confirmation, which includes the valuations contained therein. The debtor has the burden of proving the Chapter 13 plan meets the requirements for confirmation pursuant to 11 U.S.C. §§ 1322 and 1325(a). *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987); *First Nat'l Bank of Boston v. Fantasia* (*In re Fantasia*), 211 B.R. 420 (B.A.P. 1st Cir. 1997); *In re Huerta,* 137 B.R. 356 (Bankr. C.D. Cal. 1992); *In re Lindsey*, 122 B.R. 157 (Bankr. M.D. Fla. 1991); *In re Girdaukas*, 92 B.R. 373 (Bankr. E.D. Wis. 1988); *In re Hieb*, 88 B.R. 1019 (Bankr. D.S.D. 1988); *In re Hogue*, 78 B.R. 867 (Bankr. S.D. Ohio 1987); *In re Crompton*, 73 B.R. 800 (Bankr. E.D. Pa. 1987); *In re Fries*, 68 B.R. 676 (Bankr. E.D. Pa. 1986); *In re Gathright*, 67 B.R. 384 (Bankr. E.D. Pa. 1986).

The Court finds the debtor has not met his burden of proof as to valuation. Instead, the valuation provided by 21st Century is credible and should be allowed, with the adjustments noted below. The landmark case for valuation of collateral in Chapter 13 cases is *Associates Commercial Corp. v. Rash*, 520 U.S. 953, (1997). The holding in *Rash* is simple to explain but difficult to practically apply. That holding is that replacement value is the standard to apply when 11 U.S.C. § 506(a) is used by a debtor to cram down an under secured claim at plan confirmation under 11 U.S.C. § 1325(a). *See also* 11 U.S.C. § 506(a)(2). Unfortunately for the

consumer Chapter 13 practitioner, *Rash* offers little guidance for determining the replacement value. The Court did not provide any formula or concrete methodology. This has led to some conflict as both debtors' counsel and courts have struggled with its interpretation.

This Court offers a simple and hopefully instructive interpretation of *Rash* in the consumer Chapter 13 bankruptcy context. *Rash* equals a "retail value" in the absence of other evidence to the contrary because this is the replacement value to the debtor (i.e., what a debtor would have to pay to replace the collateral). "Retail value" is defined as what a willing seller and willing purchaser would pay for the property in an arm's length transaction. As one court has noted, the issue is what a willing buyer would be willing to pay for the collateral "warts and all." *In re Gonzalez*, 295 B.R. 584 (Bankr. N.D. Ill. 2003). In effect, this is a retail sale, with the condition that the product is sold "as is" and "where is" with no warranties.

Applying this standard to 21st Century's appraisal, this Court sets the value of the mobile home in this case at $34,982.00.[1] This is the exact value that the creditor's expert witness testified was the value of the mobile home. He testified that this is the retail value and what the mobile home would sell for in an arm's length transaction, "as is" and "where is." In other words, the amount the mobile home would sell for in its current condition and in its current fixed location.

However, the Court partially rejects the creditor's appraisal and request for an adjustment to the mobile home's value for delivery, setup and connection fees of $7,743.00, which would raise the appraised value to $42,725.00. The rejection is based on the following:

    (a). If the debtor could, as the testimony suggested, buy or sell his mobile home "as is" and "where is" in an arm's length transaction for the Court's valuation of $34,982.00,

---

[1] The value in the creditor's appraisal was rounded up to $35,000.00. The Court has ignored this rounding.

there is no evidence to support that the mobile home would need to be moved and that the debtor or any other purchaser would incur these costs. The mobile home is already delivered, set up and connected to the ground and utilities at its current location. These additional requested costs are superfluous. This is supported by 11 U.S.C. § 506(a)(2), which states in part "[w]ith respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property **of that kind** considering the age and condition of the property at the time value is determined [emphasis supplied]." The Court interprets "of that kind" in this case to mean a mobile home of that kind that is already fixed in place and therefore not in need of delivery, setup and connection costs.

(b) The debtor or any other purchaser could simply avoid any delivery and setup costs by buying a home already in place that has previously been delivered, set up and connected to utilities.

(c) These costs seem almost exclusive to "new" mobiles homes which must always be delivered from a factory and set up on a lot or property in order to be habitable. This Court's inference is that these setup costs, in the case of a used depreciated mobile home directly affect that mobile home's fair market value. This was not taken into account in the creditor's appraisal. Take for example two exactly equivalent mobile homes for sale, one already set in place and one not, both with a sales price of $35,000.00. Would a buyer in an arm's length transaction buy a $35,000.00 mobile home that would require an additional $7,000.00 to deliver and set up, when he could buy a functional equivalent already set in place for $35,000.00? This Court does not think so. A rational buyer, in an arm's lengths transaction would not pay $42,000.00 (effectively a $7,000.00 premium)

6

for a mobile home that has a functional equivalent for sale at $35,000.00. This is especially true when you consider the basic economies of those who purchase mobile homes. Mobile home sales tend to be to low to moderate income families, who in this Court's experience would be extremely price sensitive because of their limited resources. The additional cost of delivery and setup of $7,000.00 represents a price premium of 20%, which is an increased cost that the Court does not believe would be ignored in an arm's length transaction. Any prospective purchaser would discount the value of a mobile home not in place that would require additional setup and delivery costs such as those suggested by 21st Century.

(d) Based on the Court's experience, the costs in the creditor's appraisal are inflated and would result in an overcharge to the debtor.

In summary, the Court accepts and adopts the exact valuation of the creditor's expert witness, except for the creditor's request for an addition to the mobile home's value for delivery, setup and connection fees of $7,743.00.

**ACCORDINGLY, IT IS ORDERED** that valuation of the debtor's 2013 Southern Energy Double Wide Mobile Home is set at $34,982.00.

**IT IS FURTHER ORDERED** all other objections to confirmation are reserved until a final hearing on plan confirmation.

**IT IS FURTHER ORDERED** that the debtor shall file an amended plan either (a) containing the value set forth in this order, or (b) surrendering the collateral to the objecting creditor within 14 days of entry of this order. Should the debtor fail to file an amended plan, the Chapter 13 Trustee may upload a *sua sponte* dismissal order.

###

7

16-11029 - #27   File 02/17/17   Enter 02/21/17 16:20:05   Main Document   Pg 7 of 7